## IN THE UNITED STATES DISTRICT COURT FOR THE

## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CR-20-182-R |
| -vs- | ) | No. _____ |
| | ) | |
| MATTHEW COLBERT, | ) | Violations:  18 U.S.C. § 371 |
| | ) | 18 U.S.C. § 981(a)(1)(C) |
| Defendant. | ) | 28 U.S.C. § 2461(c) |

### I N F O R M A T I O N

The United States Attorney charges:

### Introduction

At all times material to this Information:

1.     Continental Resources, Inc. ("Continental") was an Oklahoma corporation with its principal place of business in Oklahoma City, Oklahoma.  Continental was an independent oil and gas exploration and production company with operations in Oklahoma and other states.  Continental made routine royalty and mineral rights payments to landowners and owners of mineral interests.  Continental was required to report unclaimed and abandoned accounts to the state.  Continental would make a diligent effort to locate the rightful owners of these suspended accounts before designating the accounts as unclaimed or abandoned.  After exhausting these efforts, Continental would

then report to the state when it could not locate the owners of the accounts.  The state would then claim the accounts through the process of escheatment.

2.      **Matthew Colbert** was a resident of Norman, Oklahoma.  **Colbert** worked at Continental from 2013 until late 2015.  **Colbert** initially worked as contractor for division orders before being promoted by Continental to a division order analyst.  While employed at Continental, **Colbert** researched the ownership of oil and gas mineral interests related to suspended Continental accounts where the true owners of the interests had died or for whom Continental did not have a current address or contact information.

3.      Co-Conspirator 1 ("CC-1") was a resident of Edmond, Oklahoma.  CC-1 worked at Continental until 2013.  CC-1 was a principal of at least one entity involved in the conspiracy.

4.      Co-Conspirator 2 ("CC-2") was a resident of Edmond, Oklahoma.  CC-2 was a principal of at least five entities involved in the scheme.

<u>**COUNT 1**</u>
**(Conspiracy to Commit Wire Fraud)**

5.      The United States Attorney incorporates by reference paragraphs 1 to 4.

6.      Beginning in or before October 2013, and continuing through December 2015, in the Western District of Oklahoma and elsewhere,

------------------------------------ **MATTHEW COLBERT** ------------------------------------

knowingly, willfully, unlawfully, and with interdependence, combined, conspired, confederated, and agreed with CC-1, CC-2, and with other persons, both known and

unknown, to commit offenses against the United States, namely, Wire Fraud, in violation

of Title 18, United States Code, Section 371.

7.      The purpose of the conspiracy was to fraudulently obtain royalty and

mineral interest payments from suspended accounts held in trust at Continental.  The co-

conspirators utilized various corporate entities to further the conspiracy.

8.      It was part of the conspiracy that the co-conspirators used their knowledge

and access at Continental to identify specific mineral interest accounts that had

significant suspended balances and could be fraudulently transferred with little chance of

being discovered due to the rightful owners being deceased or unable to be located.

9.      It was further part of the conspiracy that after identifying these accounts,

the co-conspirators forged fraudulent deeds purporting to convey the mineral interests

and royalties, including the accrued balances in the suspended accounts as well as any

future earnings, from the rightful owners to the entities controlled by the co-conspirators.

10.      It was further part of the conspiracy that the co-conspirators filed these

fraudulent deeds in the county where the producing property was located.  The co-

conspirators submitted these fraudulent deeds to Continental, causing Continental to wire

transfer the balance in these suspended accounts to the entities controlled by the co-

conspirators.  In addition to wiring the balance from these suspended accounts at the time

the fraudulent deed was received, Continental wired routine payments to the entities

controlled by the co-conspirators in the event the fraudulent deed was for a property that

was still generating mineral interest payments.

11.     It was further part of the conspiracy that upon receiving these fraudulent payments from Continental, the co-conspirator controlling the bank account receiving the payment would divide the proceeds up among the co-conspirators and wire transfer each respective co-conspirator a portion of the proceeds.

## Overt Acts in Furtherance of the Conspiracy

In furtherance of the conspiracy and to effect the objects thereof, the co-conspirators committed the following overt acts, among others, for the purpose of executing and continuing the conspiracy and agreement:

12.     In January 2014, the co-conspirators identified a suspended Continental account that they would target.  On or about February 1, 2014, CC-1 and CC-2 manufactured a fraudulent mineral deed for this suspended Continental mineral interest account, which belonged to "C. G."  At the time, Continental owed approximately $128,162.46 in mineral interest payments to "C. G." for operations on "C. G.'s" property in Dunn County, North Dakota.  The fraudulent mineral deed assigned all interests from "C. G." to an entity CC-2 had formed in January 2014.  CC-1 and CC-2 forged "C. G.'s" name on the mineral deed and caused it to be filed in Dunn County, North Dakota, on February 6, 2014.  On February 17, 2014, CC-2 emailed the fraudulent mineral deed to Continental and instructed Continental to transfer the ownership of the account to his entity.  Continental approved the transfer, and on March 28, 2014, it wired $125,779.57 from "C. G.'s" suspended account to Bank of America checking account XXXX XXXX XX38 belonging to CC-2's entity.  At the time of this wire, CC-2 was the only person with signature authority over this account and the account had a balance of approximately

$66.00.  Within days of receiving this transfer, CC-2 wired $32,291.59.  CC-2 then provided approximately $26,000.00 to **Colbert**.

13.     In June 2015, the co-conspirators identified a suspended Continental account that they would target.  On or about June 24, 2015, CC-1 and CC-2 manufactured a fraudulent mineral deed for this suspended Continental mineral interest account, which belonged to "M. N."  At the time, Continental owed approximately $80,816.54 in mineral interest payments to "M. N." for operations on "M. N.'s" property in Garvin County, Oklahoma.  The fraudulent mineral deed assigned all interests from "M. N." to an entity formed by CC-2.  On June 24, 2015, CC-1 and CC-2 forged "M. N.'s" name on the mineral deed.  "M. N." had passed away in 1983.  In early July 2015, CC-2 provided the fraudulent mineral deed to **Colbert**.  **Colbert**, in his capacity as a Continental division order analyst, processed the conveyance and recommended Continental approve the transfer.

14.     In June 2015, the co-conspirators identified another suspended Continental account that they would target.  On or about June 27, 2015, CC-1 and CC-2 manufactured a fraudulent mineral deed for this suspended Continental mineral interest account, which belonged to "R. C."  At the time, Continental owed approximately $79,592.65 in mineral interest payments to "R. C." for operations on "R. C.'s" property in Garvin County, Oklahoma.  The fraudulent mineral deed assigned all interests from "R. C." to an entity formed by CC-2.  CC-1 and CC-2 forged "R. C.'s" name on the mineral deed on June 27, 2015.  "R. C." was deceased at that time.  In early July 2015, CC-2 provided the fraudulent mineral deed to **Colbert**.  **Colbert**, in his capacity as a Continental division

order analyst, processed the conveyance and recommended Continental approve the transfer.

15.     On or about July 30, 2015, Continental approved the two fraudulent conveyances described in paragraphs 13 and 14.  On that same date, Continental wired a combined $153,448.38 from "M. N.'s" and "R. C.'s" suspended accounts to Bank of America checking account XXXX XXXX XX53 belonging to an entity formed by CC-2. At the time of this wire, CC-2 was the only person with signature authority over this account and the account had a balance of approximately $2,300.00.  Soon after receiving this transfer, CC-2 wired $50,352.00 from this account to CC-1.  CC-2 then wired another $50,352.00 from his Bank of America checking account XXXX XXXX XX53 to a separate entity he controlled.

All in violation of Title 18, United States Code, Section 371.


## FORFEITURE ALLEGATIONS

The allegations contained in this Information are hereby re-alleged and incorporated for the purpose of alleging forfeiture.

Upon conviction of the offense alleged in Count 1 of this Information, **Colbert** shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, constituting or derived from proceeds traceable to said offense, including, but not limited to, a money judgment representing the proceeds obtained as a result of the offense.

Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), **Colbert** shall forfeit substitute property, up to the value of the amount described in the above paragraph, if, by any act or omission of the defendant, the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).


TIMOTHY J. DOWNING
United States Attorney


CHARLES W. BROWN
WILLIAM E. FARRIOR
Assistant United States Attorneys